IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES *ex rel.* JERMAINE )
DAVIS (#R42349), )
 )
        Petitioner, )
 ) Case No. 12 C 6610
        v. )
 )
JOSEPH YURKOVICH, Warden, Hill )
Correctional Center, )
 )
        Respondent. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Jermaine Davis' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Davis' habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).[1]

## BACKGROUND

Davis does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits – which were the Supreme Court of Illinois' 2009 decision and the Illinois Appellate Court's 2011 decision – and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Carter v. Thompson*, 690 F.3d 837, 839 (7th Cir. 2012). The Court therefore adopts the underlying facts as set forth by *People v. Davis,* 233 Ill.2d 244, 330 Ill.Dec. 744, 909 N.E.2d 766 (2009), and *People v. Davis*, No. 1-10-0254 (1st Dist. Dec. 28, 2011) (unpublished).

---

[1] Davis' reply brief to his habeas petition was due on or before November 5, 2012. To date, Davis has yet to file any such reply brief.

## I. Factual Background

At trial, evidence was presented that a group of men beat Demetrius Thomas unconscious on October 10, 1999, near a Chicago housing project. Thereafter, a Chicago Housing Authority police officer responded to a call about the incident and found Thomas lying in a garbage dumpster. Thomas was taken to the hospital and remained in a coma for approximately two months before he died of an infection that resulted from the brain injury he had suffered as a result of the beating.

The State's key witness was Quincy Campbell, who had a criminal record and remained a suspect in the case until he gave a statement to police. At trial, Campbell testified that he witnessed a group of men beat the victim. Campbell, however, had a hard time remembering the names and events, but he did acknowledge that he had given a written statement to police on January 3, 2000, about the incident. According to his written statement, he knew four of the five men who beat the victim from his neighborhood, namely, Maurice Thomas, Pee Wee, Hip Hop, and Kevin. Campbell then identified Davis as Hip Hop.

Also, Campbell's written statement indicated that during the encounter, Pee Wee struck the victim with a stick three times. Campbell described the stick used to beat the victim December 17, 2012 as a piece of cut lumber. In addition, in his written statement, Campbell stated that the victim got up and ran, but the men chased him around a building where the others began beating him. When the victim fell to the ground, Davis began striking him with his feet. While Campbell was watching the beating, Maurice Thomas asked Campbell to act as lookout for police, but Campbell refused. According to Campbell, when the beating ended, Davis picked up the victim by the collar and pants and tossed him into a garbage dumpster. Campbell denied

participating in the beating.

Other evidence presented at trial included that the police conducted a lineup on January 22, 2000, in which Campbell identified Davis. Later that same day, police confronted Davis with the fact of Campbell's identification and Davis gave a written statement to an Assistant State's Attorney in which Davis admitted his involvement in the incident. According to his statement, Davis was "hanging out" in the area when he saw Maurice Thomas bring the victim outside from a building. According to Davis, the victim broke free of Maurice Thomas' grasp, ran around the back of the building, and entered a hallway on the first floor. Maurice ran after him, and Maurice and Pee Wee proceeded to beat the victim. Davis maintains that he "kept watch" from about two feet away to make sure no one saw what was going on. After Maurice Thomas and Pee Wee finished the beating, the victim was lying face down and unconscious. Davis then grabbed him by the back of his pants and shirt and threw him into a dumpster.

Samara Sadler, the sister of the victim, testified for the defense. She testified that she observed the victim come out of the building with Campbell and Maurice Thomas and that Campbell and Thomas began hitting the victim. She stated that she knew both Campbell and Thomas from the neighborhood. Thereafter, she testified that the group ran around the building and she followed them. When she got there, she observed the victim lying on the ground and unconscious. She also observed that two or three people were around the victim, but she did not know if one of them was Davis. She testified that she knew Davis from the neighborhood, but that she did not see Davis strike the victim at any time.

During its closing argument, the State argued that it was not necessary for it prove that Davis intended to kill the victim, but only that Davis or one for whom he was accountable

combined to do an unlawful act, such as commit an aggravated battery, and that the victim was killed by one of the parties committing that act. In other words, the State argued that because Davis was a part of the aggravated battery, he was legally responsible for the victim's death. The jury returned a verdict finding Davis guilty of first degree murder and the Circuit Court sentenced him to 25 years in prison.

## II. Procedural Background

Davis appealed his conviction and sentence to the Illinois Appellate Court arguing that: (1) his case should be remanded for a hearing to analyze the State's peremptory challenge of an African-American juror under *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986); and (2) the trial court erred in instructing the jury. On June 29, 2007, the Illinois Appellate Court affirmed Davis' conviction and sentence. Davis then filed a petition for leave to appeal ("PLA") to the Supreme Court of Illinois arguing both his jury instruction issue and *Batson* claim. The Supreme Court of Illinois allowed Davis' PLA on November 29, 2007. On November 20, 2008, the Supreme Court of Illinois remanded Davis' case to the trial court to conduct a *Batson* hearing. *See People v. Davis,* 231 Ill.2d 349, 369, 326 Ill.Dec. 21, 899 N.E.2d 238 (2008). After the trial court completed the *Batson* hearing on remand and concluded that Davis had failed to establish a prima facie case of racial discrimination in use of peremptory challenges, the Supreme Court of Illinois considered both the *Batson* claim and the jury instruction issue, affirming the judgment of the Illinois Appellate Court that affirmed Davis' conviction and sentence. *See People v. Davis,* 233 Ill.2d 244, 275, 909 N.E.2d 766, 783, 330 Ill.Dec. 744, 761 (2009).

On October 27, 2009, Davis filed a post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County arguing that his trial counsel had been constitutionally ineffective. More specifically, Davis argued that trial counsel refused the State's plea offer made just before jury selection without first conveying the offer to him. On December 16, 2009, the Circuit Court dismissed Davis' post-conviction petition as frivolous and patently without merit because Davis had failed to provided sufficient evidentiary support for his claim that his trial counsel failed to disclose the plea offer.

Davis appealed the Circuit Court's decision to the Illinois Appellate Court arguing ineffective assistance of trial counsel. On December 28, 2011, the Illinois Appellate Court affirmed the Circuit Court's dismissal of Davis' post-conviction petition. The Illinois Appellate Court concluded that Davis had failed to provide sufficient evidentiary support for his claim that counsel had been ineffective for failing to convey a plea offer under the procedural requirements of the Illinois Post-Conviction Hearing Act, 725 ILCS 5/122-2.

Thereafter, Davis filed a post-conviction PLA in the Supreme Court of Illinois reiterating his argument that trial counsel was constitutionally ineffective for failing to convey a plea offer. On March 28, 2012, the Supreme Court of Illinois denied Davis' PLA. Davis also moved for leave to file a motion to reconsider the denial of his PLA that the Supreme Court of Illinois denied on April 25, 2012.

### III.    Habeas Petition

On August 9, 2012, Davis filed the present 28 U.S.C. § 2254(d) petition for a writ of habeas corpus. Construing his pro se allegations liberally, *see Gomez v. Randle,* 680 F.3d 859, 864-65 (7th Cir. 2012), Davis brings the following habeas claims: (1) that his trial counsel was

5

constitutionally ineffective for failing to inform him of a plea offer that the State made the first day of trial; and (2) the State violated his due process rights when the prosecutor argued in closing arguments that a first degree murder verdict would be appropriate based on the State's proof that Davis committed aggravated battery against the victim.

**LEGAL STANDARDS**

**I.        Habeas Relief**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), the Court cannot grant habeas relief unless the state court's decision was contrary to, or an unreasonable application of federal law clearly established by the Supreme Court. *See Williams v. Taylor,* 529 U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Resendez v. Smith,* 692 F.3d 623, 626 (7th Cir. 2012). In *Williams*, the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams,* 529 U.S. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *See Williams,* 529 U.S. at 407; *Coleman v. Hardy,* 690 F.3d 811, 814 (7th Cir. 2012). "The state court's application of federal law must not only be incorrect, but 'objectively unreasonable.'" *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir. 2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 558 U.S.

6

290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (state court's factual finding not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance."). To be considered objectively unreasonable, a state court's decision must be "well outside the boundaries of permissible differences of opinion." *Carter v. Thompson,* 690 F.3d 837, 843 (7th Cir. 2012) (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). A claim is also procedurally defaulted "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

7

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct. 2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as "some objective factor external to the defense" which prevents a petitioner from pursuing his constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). Prejudice means actual prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at 494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner establishes that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* at 496.

## ANALYSIS

**I.     Ineffective Assistance of Counsel – Claim I**

Davis' first habeas claim is that his trial counsel was constitutionally ineffective for failing to inform him of a plea offer that the State made the first day of trial. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of trial counsel under the Sixth Amendment, Davis must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

8

The Court cannot reach the merits of Davis' ineffective assistance of trial counsel claim brought in his post-conviction petition because the Illinois Appellate Court rejected this argument on independent and adequate state law grounds. *See Kerr v. Thurmer,* 639 F.3d 315, 321 (7th Cir. 2011) ("Federal habeas corpus relief from a state conviction is not available when the decision rests on a state procedural ground independent of any federal issue and adequate to support the judgment."). Here, the Illinois Appellate Court rejected Davis' post-conviction petition on procedural grounds because he did not submit objective evidence or affidavits corroborating his ineffective assistance of counsel claim as required by Illinois law. *See People v. Davis*, No. 1-10-0254, at *5 (1st Dist. Dec. 28, 2011) (unpublished). Indeed, the Seventh Circuit has concluded that failure to properly submit affidavits pursuant to the Illinois Post-Conviction Hearing Act is an independent and adequate state ground for rejecting a *Strickland* claim. *See Thompkins v. Pfister,* 698 F.3d 976, 986 (7th Cir. 2012). Thus, the Illinois Appellate Court's reliance on this independent and adequate state procedural law bars collateral review in federal court unless Davis can show cause and prejudice or that a miscarriage of justice would result if the Court did not review the merits of his claim. *See id.* Davis, however, has failed to argue any such exception to his procedural default. Accordingly, the Court denies Davis' first habeas claim because it is procedurally defaulted.

## II. Due Process Prosecutorial Misconduct – Claim II

Next, Davis maintains that the State violated his due process rights when the prosecutor argued in closing argument that a first degree murder verdict would be appropriate based on the State's proof that he committed aggravated battery against the victim. See *Darden v. Wainwright,* 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (In evaluating a claim of

9

prosecutorial misconduct, the relevant inquiry is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process.").

The Court cannot reach the merits of Davis' prosecutorial misconduct claim because he failed to present this argument for one full round of state court review. *See Mulero,* 668 F.3d at 536. In other words, the Court cannot "review a habeas petitioner's constitutional issue unless he has provided the state courts with an opportunity to resolve it 'by invoking one complete round of the state's established appellate review process." *Byers v. Basinger,* 610 F.3d 980, 985 (7th Cir. 2010) (quoting *Boerckel,* 526 U.S. at 845.)

Here, Davis did not present this argument for one full round of review on direct appeal or in his post-conviction petition. *See Gray v. Hardy,* 598 F.3d 324, 327-28 (7th Cir. 2010) ("A petitioner in federal court must first exhaust his state remedies by fairly presenting his claims through one full round of state-court review."). In fact, Davis admits that his due process claim was never presented in a PLA to the Supreme Court of Illinois in his habeas petition. (R. 1, Habeas Pet., at 6.) Further, Davis does not argue that his procedural default is excepted by cause and prejudice or the fundamental miscarriage of justice exception. *See Murray*, 477 U.S. at 492-96. Because Davis' due process claim is procedurally barred, the Court denies Davis' second habeas claim.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Accordingly, the Court must determine whether to grant Davis a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,* 641 F.3d 830, 832 (7th Cir. 2011). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. § 2253(c)(2). Under this standard, Davis must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, jurists of reason would not debate the Court's conclusion that Davis procedurally defaulted his claims and did not offer an exception to these defaulted claims, such as cause and prejudice or the fundamental miscarriage of justice exception. *See House v. Bell,* 547 U.S. at 536; *Murray v. Carrier,* 477 U.S. at 492-96. Therefore, the Court declines to certify any issues for appeal. *See* 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Davis' petition for a writ of habeas corpus and declines to certify any issues for appeal. *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** December 17, 2012

**ENTERED**

*[signature]*

**AMY J. ST. EVE**
**United States District Judge**

11